THE CANISTER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69579. Promulgated June 8, 1934.

*Fred A. Woodis, Esq.*, and *Luther F. Speer, Esq.*, for the petitioner.
*Harold Allen, Esq.*, and *Paul A. Sebastian, Esq.*, for the respondent.

OPINION.

ARUNDELL: A deficiency in income tax for the fiscal year ended April 30, 1931, has been determined in the sum of $4,385.20 by reason of the disallowance by the respondent of a claimed loss from the disposition of certain shares of stock on the ground that the alleged sale of the stock was not bona fide. The petitioner is a New Jersey corporation, all of the shares of which, other than qualifying shares, were owned by R. T. Garfein. On March 17, 1931, it owned the following shares of stock, which had cost it $80,215.53:

    200 shares of Certainteed Products Corporation
    262 shares of Willys-Overland Co.
    100 shares of Fairbanks, Morse & Co.
    100 shares of Calumet & Hecla Co.
    100 shares of Chesapeake Corporation
    200 shares of Associated Gas & Electric Co.
    50 shares of Empire Trust Co.
    100 shares of American Telephone & Telegraph Co.

These shares had suffered a great shrinkage in market value since their purchase and petitioner had a large income for the taxable

period ended April 30, 1931, against which it wished to secure a deduction for income tax purposes. To that end petitioner's president, Garfein, discussed with John R. Chidsey the transaction over which this controversy arises. Chidsey was an alderman of Easton, Pennsylvania, which is across the Delaware River from Phillipsburg, New Jersey, where petitioner's office is located. The two towns constitute a single community. Chidsey had no interest in petitioner's corporation, and he and Garfein had had no previous business relations. They were, however, members of the same clubs and had been friends for a number of years. On March 17, 1931, Garfein agreed to transfer to Chidsey the above listed stocks at the closing quotations on that day, which amounted to $36,857.75 for the entire block. The following day Garfein took the certificates to the Easton office of E. W. Clark & Co., brokers, and directed that the certificates be transferred to Chidsey. He received a receipt for the certificates which he delivered to Chidsey and which Chidsey redelivered to him when the certificates were issued in Chidsey's name. Upon receipt of the certificates Chidsey gave his note to petitioner in the amount of $36,857.75 which note was placed in petitioner's safe-deposit box.

Seven days after the close of petitioner's fiscal year and 51 days after the above described transaction, the identical number of shares in the several described corporations, plus four shares of Associated Gas & Electric stock which had been received by Chidsey as a stock dividend, were retransferred to petitioner and Chidsey's note was returned to him. The transfer back to petitioner was on the basis of the closing stock prices on May 7, 1931. The total price of the shares at the time of this last transaction was $3,026 less than the price at the time of the transfer to Chidsey. No loss was claimed by Chidsey on this transaction in his 1931 return. The note given by Chidsey called for interest, but no interest was ever paid by him. and none had been paid to the date of trial of this case. The difference in market value of the shares between the first and second transactions was $3,026, but no part of this sum has been paid and petitioner's books do not carry the item as an account receivable due from Chidsey.

Petitioner had other transactions involving the sale of securities during the taxable period under review, but these sales were in every instance transacted through brokers on the exchange.

The only witness to testify, other than the bookkeeper who identified book entries, was petitioner's president, and his explanation for this unusual performance was that it might become known that the company was selling some of its securities if they were sold in the the usual manner on the exchange. This reason is not convincing.

The securities were all of well known companies enjoying a wide market and could have been sold through any one of a large number of brokers in Philadelphia or other nearby places if it were not desirable to sell them through a broker in or near petitioner's home town.

The evidence does not overcome the presumption of correctness attaching to the respondent's determination, but indeed supports it. Cf. *J. R. Young*, 6 B.T.A. 656.

*Decision will be entered under Rule 50.*